DELANA BALL in her own right, and as Natural Tutrix of her Minor Children *v.* WILLIAM L. HODGE and another.

Where a defendant consented to become surety for the plaintiff as administratrix of her husband's succession, on condition that she would leave the whole management of the estate to his co-defendant, he will be responsible, *in solido* with the latter, for any amount that may be due from him to the plaintiff, for her share in the community of *acquets.*

One who has managed all the business of a succession, under an agreement by which a third person consented to become the security of the plaintiff as administratrix, on the condition of her trusting the sole management of the estate to the former, will be allowed the usual commissions of an administrator, as an offset, *pro tanto*, against any claim by the plaintiff for a sum coming to her, as the widow of the deceased, from the succession.

APPEAL from the District Court of the First District, *Buchanan, J.*

GARLAND, J. Jonathan Ball, the late husband of the plaintiff, and father of the minors, died in May, 1834, leaving a large property, real and personal, and debts to a large amount. Some of of the creditors applied for the administration of the estate but the plaintiff insisted upon her legal preference to be appointed administratrix, and the administration was granted to her upon condition of her giving surety. She found some difficulty in obtaining sufficient surety, but, finally, the defendant, A. Hodge, agreed to become surety, upon condition that the administratrix would give her power of attorney to William L. Hodge, his brother, and co-defendant, to manage all the affairs of the succession in her name. This condition she assented to, and, in the month of February, 1835, a power of attorney was made before a notary, in which full powers were conferred on W. L. Hodge to manage all the business; but to his act, Andrew Hodge was not a party. W. L. Hodge continued to manage the estate for several years; collected large sums of money; and paid off the debts. He rendered to the Probate Court, in the name of Mrs. Ball, various accounts and *tableaux* of debts, by the last of which, there appeared to be a balance in her hands of $14,694, but which was in fact in the hands of her agent; all the debts of the estate having been, apparently, paid, except a

few demands in contestation in court. It is to recover this sum, and a further one of $2,951 as her legal commissions as administratrix, which she says W. L. Hodge received, that this suit is instituted, The answer of W. L. Hodge is a general denial, and a plea of compensation for payments made after the rendition of the last account, which, he says, greatly reduce the demand. The answer of Andrew Hodge is, that he agreed to become the surety of plaintiff on her administration bond; but that he had nothing to do with the acts of W. L. Hodge as her agent, for whom he is in no manner responsible. He denies that he ever acted as agent of the plaintiff, and opposes a general denial to all the allegations in the petition.

On the trial it was proved by a witness who acted as the counsel of the parties, "that W. L. Hodge was to have the whole management, in consideration of Andrew Hodge going security for Mrs. Ball."

The court below held Andrew Hodge responsible, *in solido*, for the agency of his brother, and gave a judgment against them for $9,509 33, with legal interest, from which the former has appealed.

The first question that arises in the case, is as to the responsibility of Andrew Hodge. As towards the heirs of Ball and his creditors, there is no question as to his liability, as surety on the bond; and it is to be remembered, that the heirs are parties to this suit, and that the debts of the estate having been paid, the creditors have no interest in the question. Therefore, as to one half of what may be found due, he is responsible. Let us then see how it is in relation to the other half, which it is to be presumed belongs to Mrs. Ball, as a partner in the community. From the evidence in the case it is clear, that Mrs. Ball was but a nominal administratrix, and that W. L. Hodge was the actual administrator of the estate; and this resulted from the condition imposed by Andrew Hodge, when he agreed to sign the bond. It is fair to presume, that prudential and proper motives induced the condition; but it was in effect saying to Mrs. Ball, in your skill, fidelity and capacity I have no confidence; but if you will let a person in whom I have confidence, and will name, manage all the affairs of the succession, I will sign the bond. The

clear inference from this is, I will not be responsible for you, but I will for the person named. Domat, book I. tit. 15, § 1, art. 13, tells us " that, if a person engages one in some loss that may be imputed to him, as if he should persuade one to lend money to an unknown person," and it is lent on the assurance that the borrower will repay it, then the person recomending the borrower, is bound to make it good; and the case of *Amory &c.* v. *Boyd*, 5 Mart. 414, was decided by this court on that principle. See also 9 Mart. 385. The defendants contend that, according to art. 3008 of the Code, suretyship cannot be presumed. This we admit: but in this case we think it is apparent that Andrew Hodge considered his suretyship for Mrs. Ball as merely nominal. His brother was the actor in the business, and he intended that he should be so when he signed the bond. We are, therefore, of opinion, that the court did not err in holding the appellant responsible.

The next question is as to the amount owing. As to the question about the commissions, we think that, under the circumstances of the case, the judge did not err in allowing them. W. L. Hodge, after the time of his appointment as attorney in fact, was the real administrator of the succession, and it is upon that ground alone that Andrew Hodge can be held responsible for his acts. All the other questions are matters of account entirely; and, after the best examination we have been able to give them, we see but one error that requires correction; and that is as to the refusal of the judge to allow a credit for $1,722 52, money received and retained by W. J. Barney, the brother and agent of the plaintiff, previously to the appointment of W. L. Hodge as the attorney in fact of the plaintiff, which was in February, 1835. Previously to that date, it does not appear that he had any thing to do with the estate; and, of course, he cannot be responsible for the acts of the plaintiff, or her brother, who it is proved was actively engaged in managing the affairs of the succession.

As to the items of $110 and $343 41, we see no vouchers for them; and the fact of their being mentioned in a *tableau* presented to the Probate Court, leaving the sums blank, does not dispense with the production of some proof of payment.

Ball v. Hodge and another.

As to the other items, it is somewhat difficult to pass on them properly, in consequence of the general manner in which the accounts are stated. If a detailed account of receipts and payments had been made out, it would have been easy to detect any errors in it; but as the receipts and payments are stated, we cannot say that the judge, who had the parties before him to explain all the accounts, erred in any other respect than as before mentioned.

It is, therefore, ordered and decreed, that the judgment in favor of the plaintiff be reduced, and credited with the sum of seventeen hundred and twenty two dollars and fifty two cents, to take effect on the 4th of November, 1839; and be affirmed for the sum of seven thousand seven hundred and eighty six dollars and eighty one cents, with interest thereon at the rate of five per cent per annum from the date aforesaid. The plaintiff and appellee paying the costs of this appeal; the costs in the court below to be paid by the defendants.*

*Preston,* for the plaintiff.
*Roselius* and *Eustis,* for the appellant.

---

* *Roselius* and *Eustis,* in a petition for a re-hearing, urged that Andrew Hodge, by becoming surety for Wm. L. Hodge, made himself responsible for the acts of the latter, so far as the creditors and heirs of the deceased were concerned; but not towards Mrs. Ball, for the acts of her own agent. The mere fact that Andrew Hodge, when requested to become her surety as administratrix, consented to do so on the condition that Wm. L. Hodge should act as the agent of the administratrix, cannot change the whole character of the obligation he contracted. Mrs. Ball was perfectly free to accept or reject the condition; and Andrew Hodge had a right to impose any terms he thought proper, not illegal or immoral, as the condition on which he would become surety. Suretyship is an accessory, and can never exceed the principal obligation; in the decision rendered in this case, this rule has been entirely lost sight of.

*Preston,* in answer to the petition for a re-hearing. Mrs. Ball gave a power of attorney to William L. Hodge, and, in his absence, to Andrew Hodge. They were each equally cognisant of her business. Mrs. Ball was appointed administratrix of her husband's estate, on giving Andrew Hodge as her surety. He became the surety on the condition alone that the above power of attorney should be given, and that Wm. L. Hodge should have the whole management of the estate. Andrew Hodge also required that Mr. Pierce should be the lawyer of the estate. Thus as surety he was to control every thing.

Mrs. Ball, as administratrix, obtained judgment against Andrew Hodge and one Barney the 11th March, 1836, for $28,000 with interest. Wm. L. Hodge acknowledged, on record, satisfaction of this judgment from Andrew Hodge, and by notarial act, on the

---

16th of July, 1836, transferred the judgment to Andrew Hodge. Pierce, who was the attorney of the Hodges, states that no money *was paid;* that he entered satisfaction because he was directed to do so by Wm. L. Hodge. Andrew Hodge did not satisfy the judgment; but satisfaction was acknowledged, and a transfer made to prevent a judicial mortgage against him, and to enable him to act by subrogation against Barney. No such sum was deposited in the Bank of Orleans where the funds of the estate were deposited. The judgment was shown to be unpaid by the account filed by Wm. L. Hodge. The district judge gave judgment for the plaintiff, on the ground that Andrew Hodge was responsible under his bond, both Wm. L. Hodge, and the attorney of the estate, having been appointed by him, and being under his control.

The conclusion of the judge would be wrong, if the transaction for which the plaintiff seeks redress, was between Wm. L. Hodge and a third person; but it is for a transaction between William L. Hodge and Andrew Hodge. The latter knew that Mrs. Ball had given Wm. L. Hodge no authority to discharge him from a large judgment, without payment. His liability, in this view of the case, results from his combination with Wm. L. Hodge to wrong her and her children. Andrew Hodge is bound to pay the balance due of the judgment in favor of Mrs. Ball and her children.

There is far less pretext in this case for giving validity to a fictitious and collusive discharge of a debt, than in the case of *Bienvenu* v. *Segura,* 19 La. 346, in which this court, instead of acknowledging such a discharge to be valid, gave damages for pretending that it was.                    *Re-hearing refused.*